## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Greenwood Estates
Lot Owners' Association, Inc.

v.

Charles B. King et al.

March 31, 1994

Case No. L93–203

BY JUDGE WILLIAM H. LEDBETTER, JR.

This case began as a warrant in debt in the general district court, filed by the plaintiff (the Association), a property owners association, to collect past due assessments. The defendants (collectively, King), lot owners in the subdivision, removed the case to this court. In their affidavit of substantial defense, the defendants alleged, *inter alia*, that the Association cannot make this claim because it "is not a legally formed entity."

After discovery, including admissions, the defendants filed a motion for summary judgment. In that motion, the defendants assert that the Association is a nullity because its charter provisions and the provisions of other governing documents are inconsistent with the provisions of the deed of dedication of the subdivision. Therefore, they contend, the officers and directors are without authority to collect these assessments.

The parties agree that if King's position were upheld, such an adjudication would be dispositive. The parties also agree that no material fact about this issue is in dispute. Hence, consideration of the motion for summary judgment is proper under Rule 3:18.

The starting point of an analysis of King's position is the recorded deed of dedication. That document puts all lot purchasers on notice of the servitudes — the benefits and burdens — applicable to the property.

The deed of dedication, Section B (pages 7–9), provides for the establishment of a property owners' association to be known as Greenwood Estates Section Two Lot Owners Association. Pertinent to this controversy, the deed of dedication states: "There shall be one member of the Association for each lot in Greenwood Estates Section Two. In the event that there is more than one owner of a lot, then they shall designate which one of them shall vote in Association matters." The Association is given power to adopt bylaws and regulations for the safety and welfare of the subdivision residents. The Association is authorized to levy an annual assessment, with limits on the amount of increases in any one year. An unpaid assessment constitutes a lien, and the Association may collect by personal action against the lot owner or by enforcement of the lien. The Association's powers are expressly limited to those designated in the deed of dedication.

Several years later, the Association was incorporated. The membership clause (Article V) of the articles of incorporation tracks the above-quoted language in Section B of the deed of dedication: "There shall be one member of the Association for each lot in the subdivision. In the event there is more than one owner of a lot, they shall designate one owner to vote on Association matters." However, Article VIII of the articles ("multiple Lot Ownership") provides: "For all purposes hereof, all lots owned by (1) the same owner (2) any family member of an owner, any Trust, corporation, or partnership of which any owner or any family member of the owner is a beneficiary, owner, shareholder, principal, officer, or director shall be deemed to be owned by the same owner." The bylaws contain an identical provision.

King contends that Article VIII of the Association's articles of incorporation and the identical provisions in the corporate bylaws, create a scheme by which a lot owner and his family have one vote in Association matters regardless of the number of subdivision lots they own. This is inconsistent with the deed of dedication, they argue, which, given a fair reading, entitles *each lot* in the subdivision to one vote. This is important to King because he and members of his family own 21 of the 34 lots in the subdivision.

The Association agrees with King that Article VIII of the articles of incorporation limits the votes of lot owners and family members in the governance of the Association.

Therefore, the parties agree that the purpose and effect of Article VIII is to give King and his family only one vote in Association

matters even though they collectively own 21 of the 34 lots in the subdivision.

There is nothing inherently evil or improper about restricting voting rights of shareholders in stock corporations or the voting rights of members in nonstock corporations. In fact, members in nonstock corporation are not entitled to vote except as the right to vote is conferred in the corporate charter. Virginia Code § 13.1–846.

Here, however, as we have seen, the starting point for determining King's voting rights is the deed of dedication, not the Association's charter or bylaws. This is so because in this case the deed of dedication is the recorded instrument that puts lot purchasers on notice of the servitudes imposed upon their property, and it is the deed of dedication that provides for the creation of the Association and expressly delineates its "power, authority, and limitations." Where a recorded deed of dedication (or declaration, as it is sometimes called) of a residential subdivision sets out terms and conditions for the establishment and operation of a property owners' association, the developer (and his successors in interest) cannot later alter those terms and conditions by creating an association with a significantly different structure or with substantially different powers to the prejudice of persons who purchased their lots in reliance on the recorded deed of dedication. It is axiomatic that purchasers of real estate acquire their property subject only to those encumbrances that appear of record in the property's "chain of title" (or, in some instances, of which the purchaser had prior actual knowledge). Hence, the servitudes cannot be unilaterally altered unless the document creating the servitudes expressly provides otherwise.

The court is of the opinion that Article VIII of the articles of incorporation and the bylaws of the association are fatally inconsistent with the provisions in the deed of dedication that delineate the "power, authority, and limitations" of the Association.

The deed of dedication states that there shall be *one member* of the Association for *each lot*. "Member" and "lot owner" are used interchangeably, without precise definition, in the document. Each *lot owner* is bound by the terms of the deed of dedication and is to pay all assessments levied by the Association. Meeting notice is to be sent to each *lot owner*. If there is more than one *owner of a lot*, they will designate which *one of them* votes in Association matters. These various provisions, together with the synonymous use of the words "mem-

ber" and "lot owner" in the deed of dedication, envisions a property owners' association that operates on the principle of one lot, one vote.

Accordingly, the court holds that the deed of dedication requires that the Association be organized and function in such a manner and that each lot has one vote. Article VIII of the Association's charter clearly violates that requirement and, therefore, is void. Similarly, the provisions of the bylaws that mirror Article VIII of the charter are void. It follows that the assessments sued for, improperly voted by the membership and the board of directors, cannot be enforced against King. For these reasons, the motion for summary judgment will be granted and the case dismissed.

The court is mindful that paragraph 7 of Section B of the deed of dedication imposes an annual assessment of $125.00 per lot. There is no requirement that the Association vote to impose such an assessment each year. Thus, it is not clear what King and members of his family who own lots in the subdivision will or can do with respect to past due assessments once they are accorded their right to vote on the issue in the manner prescribed above. The court need not determine that question in order to adjudicate the specific issue raised in the summary judgment motion.