# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Mineral Springs Plantation
Homeowners Association

     v.

Robert G. Hanus et al.

December 5, 2000

Case No. CH00-214

BY JUDGE WILLIAM H. LEDBETTER, JR.

Membership in a homeowners association is the principal subject of this litigation.

The case is before the court on motions for partial summary judgment. Except for an evidentiary hearing conducted on April 25, 2000, in connection with a preliminary injunction, no evidence has been taken. Instead, the parties have submitted three specific issues to the court for adjudication, and, to aid the court in making its decisions, they have submitted certain undisputed facts and copies of the pertinent governing documents.

By order entered on September 28, 2000, the court and counsel framed the issues: (1) Who are the members of the Mineral Springs Plantation Homeowners Association? (2) Who is entitled to vote on Association matters? (3) Who is obligated to pay assessments?

John E. Pruitt, Jr., and Richard A. Pruitt, sometimes trading as Plank Road Company, a partnership, created Mineral Springs Plantation, an upscale residential subdivision in Spotsylvania County, in 1988. The subdivision consists of 101 lots. Restrictive covenants were recorded on October 5, 1988. The covenants called for a homeowners association. The developers established an association under the Nonstock Corporation Act on November 1, 1988.

Supplemental covenants were recorded on August 22, 1998, and March 8, 2000.

Over the years, most of the lots in Mineral Springs Plantation have been sold. Many houses have been constructed.

In 1999, the Pruitts, acting as directors of the Homeowners Association, set up a "transition committee" for the purpose of transferring responsibility for the Association from them to members of the Association. The activities of the committee led to an election of new officers of the Association. The election was conducted by mail in which only residents of the subdivision were allowed to participate.

The Pruitts, acting on behalf of the Association, brought this suit on March 23, 2000, to invalidate the election on the grounds that it was not authorized by the board of directors of the Association, was not conducted according to law, and deliberately excluded property owners who do not reside in the subdivision. In response, the defendants contend that the election was conducted properly in that only residents of the subdivision are entitled to vote as "members" of the Association.

### *Membership in the Association*

The declaration of restrictive covenants provides for a homeowner association. Paragraph 2, titled "Homeowners Association," states:

> Each Owner shall be a member of the Homeowners Association and abide by the duties and obligations established by such association.

Paragraph 39 defines membership of the Association:

> Each Owner of a lot which is subject to assessment shall be a Member of the Association. Membership shall be appurtenant to and may not be separated from ownership of any lot which is subject to assessment.

Which lots are subject to assessment? According to the covenants, assessments attach to lots, and there is no indication that any lot is excluded.

Paragraph 4 of the covenants contains a number of definitions. Those definitions are to be applied "unless the context shall otherwise require." "Lot" is defined as "any lot shown on any recorded subdivision plan . . . and any improvements thereon with the exception of the Common Properties. . . ." Further, "Owner" is defined as "the record owner . . . of the fee simple title to

any Residence. . . ." Finally, "Residence" means a "detached single-family dwelling not to exceed three stories in height."

The articles of incorporation divide membership in the Association into two classes. The Class B member is the developer, Plank Road Company. Class A membership is defined as "all owners of single family residences located in [the subdivision], and shall be entitled to one vote for each lot owned." If more than one person owns an interest in a lot, then "all such persons shall be members" and the vote for such lot shall be exercised as they determine, but in no event shall more than one vote be cast with respect to any lot."

In the March 8, 2000, amendment to the covenants, the developers belatedly sought to clarify membership in the Association. The amendment specifically declares that "the correct interpretation" of the original covenants "is that the owner of each lot in the subdivision was and is entitled to one vote per lot in all Association affairs."

Previously, this court has observed that the starting point for an analysis of a dispute such as this is the declaration of restrictive covenants. That document delineates everyone's property rights and obligations, and puts all purchasers on notice of the servitudes, benefits and burdens, applicable to the property. *See Greenwood Estates v. King*, 33 Va. Cir. 334 (1994).

Beginning, then, with the declaration of restrictive covenants, it is apparent from a reading of the pertinent provisions, taken as a whole, that all lot owners are members of the Association. Paragraphs 2 and 39 of the covenants are clear and unambiguous. Paragraph 36, declaring that all rights to the common areas held by the Association pass with title to "every Lot," and Paragraph 40, which grants one vote for "each lot," further clarify the matter.

The definitions in paragraph 4 of the covenants, relied upon by the defendants, apply "unless the context shall otherwise require." Here, the context requires a different interpretation. The court agrees with the plaintiff that a person purchasing a lot in Mineral Springs Plantation, after a review of the recorded covenants, would necessarily arrive at the conclusion that he or she would be a member of the Association upon purchase of a lot.

The court is of the opinion, based on a fair reading of the covenants, that the developer did not intend to disenfranchise property owners in Mineral Springs Plantation merely because at a particular point in time they do not actually live there.

Insofar as the Association's articles of incorporation are inconsistent with the provisions of the prior recorded covenants, the covenants prevail. *See Greenwood Estates, supra*. However, a review of Article VI of the articles of

incorporation shows that the incorporators refer to "lot" four times in defining Class A membership, again demonstrating the emphasis upon property ownership rather than residency. Therefore, despite the loose language of the article, it is apparent that membership in the Association includes all lot owners.

## Voting

Voting rights follow membership, and so, as to Class A members of the Association, each lot owner has one vote on Association matters. See paragraph 40 of the covenants and Article VI of the articles of incorporation. (The Class B member, Plank Road Company, has three votes for each lot owned until that class is converted to Class A membership upon the happening of certain events not pertinent here.)

## Assessments

Assessments by the Association attach to every lot in the subdivision. This is obvious from the plain meaning of paragraphs 43-48.

In 1998, the Pruitts, acting as the architectural control committee, recorded a supplemental declaration of restrictive covenants by which they sought to exonerate, or "exempt," the developer, Plank Road Company, from any assessments "or any other fees" imposed by the Association.

This court is of the opinion that the 1998 document is ineffectual.

The restrictive covenants establish an architectural control committee (paragraph 23) to "enforce the foregoing reservations and restrictions as provided above." The covenants (paragraph 22) give the committee authority to "make exceptions and grant variances from any restriction. . . ." Relying on that provision, the plaintiff and the cross-defendants (the Pruitts) contend that Plank Road Company owes no assessments because the committee has exempted it from such obligations.

In the context of private land use restrictions, an architectural control committee, sometimes called an architectural review committee or design review committee, is established for the purpose of approving building plans. Normally, it is given the power to review and approve or reject all structures within certain parameters specified in the controlling documents. It may also regulate outside lighting, signage, fencing, and the like. In furtherance of those responsibilities, such a committee is often empowered to grant variances and exceptions to those regulations, similar to the "safety value" role that boards of zoning appeals play in connection with public land use regulations.

It would defy common sense to construe "variance and exception" language in a covenant related to architectural reviews and controls so broadly that such a committee could record an amendment to the restrictive covenants, thereby completely altering who does and does not pay assessments to maintain the roads and common areas of the subdivision.

The language of paragraph 22 and 23 of the covenants cannot be construed so as to confer upon the architectural control committee such sweeping authority. The committee's 1998 effort to change the assessment provisions of the restrictive covenants is invalid and of no effect. Thus, Plank Road Company, as lot owner, is obligated to pay assessments

## Conclusion

The plaintiff's motion for partial summary judgment is granted, there being no material facts genuinely in dispute as to these issues submitted. The court finds that all lot owners are members of the Association, are entitled to vote, and are obligated to pay assessments.